UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MULTIMATIC, INC.,
a Canadian corporation,

    Plaintiff/Counter-Defendant,        Case No. 05-60120

v.        Hon. John Corbett O'Meara

FAURECIA INTERIOR SYSTEMS
USA, INC., a Delaware corporation,

    Defendant/Counter-Plaintiff.
_____/

**OPINION AND ORDER DENYING FAURECIA'S MOTIONS
FOR PARTIAL JUDGMENT AS A MATTER OF LAW
AND FOR RELIEF FROM JUDGMENT**

Before the court are Defendant Faurecia Interior Systems USA, Inc.'s motion for partial judgment as a matter of law, filed October 18, 2007, and motion for relief from judgment, filed December 21, 2007. These motions have been fully briefed. Pursuant to LR 7.1(e)(2) (Dec. 1, 2005), the court will determine this matter on the briefs and without oral argument. For the reasons set forth below, Faurecia's motions are denied.

**BACKGROUND FACTS AND PROCEDURAL HISTORY**

This is a contract dispute between two auto suppliers. Plaintiff Multimatic worked with Defendant Faurecia to design and manufacture an instrument panel for DaimlerChrysler vehicles. Specifically, Multimatic designed a cross-beam, which was a component of the instrument panel that Faurecia supplied to DaimlerChrysler. In February 2004, the parties entered into a Confidentiality Agreement, which Multimatic wanted to protect its proprietary designs and information from third-parties, especially competitors. Subsequently, Faurecia disclosed Multimatic's designs and other confidential information to Multimatic's competitors in

order to obtain a cheaper price for manufacturing the cross-beam.

In ruling on motions for summary judgment, the court found that Faurecia breached the Confidentiality Agreement as a matter of law by disclosing Multimatic's designs and other confidential information. The court also found that the parties did not have an enforceable production contract. With respect to the Confidentiality Agreement, the only issue remaining for trial was the amount of damages suffered by Multimatic as a result of Faurecia's breach.

After a five-day trial beginning September 11, 2007, a jury awarded Multimatic $9,381,306 for Faurecia's breach of the parties' Confidentiality Agreement and $600,515 for Faurecia's breach of certain prototype purchase orders. Faurecia contends that the jury's award of lost profits for the breach of the Confidentiality Agreement cannot stand as a matter of law. Faurecia also seeks relief from the judgment pursuant to Fed. R. Civ. P. 60(b), specifically a reduction of Multimatic's damages based upon alleged newly discovered evidence.

## LAW AND ANALYSIS

**I.     Motion for Partial Judgment as a Matter of Law**

    **A.     Standard of Review**

Having moved for judgment as a matter of law during trial, Faurecia now renews that motion pursuant to Fed. R. Civ. P. 50(b). In analyzing a motion for judgment as matter of law, the court does not "weigh the evidence, evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." Preferred Properties, Inc. v. Indian River Estates, Inc., 276 F.3d 790, 799 (6th Cir. 2002) (citation omitted). Instead, the court views "the evidence in the light most favorable to the nonmoving party and decide[s] if it was sufficient to raise a genuine issue of material fact for the jury." Id. (citation omitted). Granting a motion for judgment as a matter

of law is appropriate "only when there is a complete absence of fact to support the verdict, so that no reasonable juror could have found for the nonmoving party." Id. (citation omitted).

### B. Lost Profits

Faurecia asserts that Multimatic improperly relied upon the unenforceable Pre-Development Letter of Intent (PDLOI) and parol interpretations of the Confidentiality Agreement to support its lost profits claim. According to Faurecia, Multimatic was not guaranteed the production contract; indeed, the court found the PDLOI to be unenforceable. Faurecia contends that, as a result, the profits Multimatic lost as a result of not being chosen as the supplier of the cross-beam is not the proper measure of damages for breach of the Confidentiality Agreement.

Faurecia also argues that the lost profits were not proximately caused by the breach of the Confidentiality Agreement, were not within the contemplation of the parties at the time of contracting, and were based upon speculation.

Multimatic argued at trial that if Faurecia used its design, it was also obligated to award Multimatic a production contract. Instead, Faurecia disclosed Multimatic's design and other confidential information to a competitor, Brown, who was awarded the production contract. Faurecia admitted that if it (and Brown) had not used Multimatic's design, it would not have been able to maintain the timetable required by DaimlerChrysler.

Under Michigan law, the damages recoverable for a breach of contract "are those damages that arise naturally from the breach or which can *reasonably* be said to have been in contemplation of the parties at the time the contract was made." Lawrence v. Will Darrah & Assoc., Inc., 445 Mich. 1, 13; 516 N.W.2d 43 (1994) (emphasis in original; citation omitted). In

other words, with respect to lost profits, the evidence must be "sufficient to allow a jury to infer that at the time the parties entered into the contract, the defendants reasonably knew or should have known that in the event of breach this plaintiff would lose profits." Id. at 15.

Plaintiff has satisfied this standard. The Confidentiality Agreement provides that

> Each of Multimatic, Venture and Faurecia possesses proprietary confidential information pertaining to its business and customers and possesses technical information relating to its products, designs and services, including compositions, raw materials, formulations, additives, components, production processes, plant layout, engineering concepts and designs, analysis models and results, know-how, and other intellectual and industrial property, which is generally not available to the public (. . . "Sensitive Information"). . . .
>
> All Sensitive Information of a disclosing party and all rights thereto shall remain the exclusive property of the disclosing party and shall be held in trust by the receiving party for the disclosing party.

Def.'s Ex. A. The Agreement further provides that the parties will keep Sensitive Information confidential and not disclose it to any third party. Id.

At the summary judgment stage, the court found that Faurecia breached the Confidentiality Agreement by disclosing Multimatic's designs to its competitors for the purpose of a "market tests" to determine if the cross-beam could be manufactured more cheaply. As a result of these market tests, Faurecia obtained a lower price quote for the manufacture of the cross-beam from one of Multimatic's competitors, Brown Corporation. Faurecia demanded a price reduction from Multimatic, to no avail. Faurecia then awarded the cross-beam program to Brown. Faurecia subsequently provided Brown with additional Sensitive Information that belonged to Multimatic, including CAD designs, CAE models and analysis, Multimatic's Design

Failure Mode and Effects Analysis, its Design Verification Plan & Report, and a prototype cross-beam manufactured by Multimatic. The court ruled that Faurecia's disclosure of this information also violated the Confidentiality Agreement as a matter of law.

Faurecia essentially argues that, because Multimatic was not guaranteed the production contract, lost profits is not the proper measure of damages for the breach of the Confidentiality Agreement. However, Faurecia reasonably should have foreseen that, if it breached the Confidentiality Agreement by disclosing and using Multimatic's design, Multimatic would lose the profits it would have obtained by being the chosen supplier. Under the circumstances of this case, lost profits make Multimatic whole for the specific breach of the Confidentiality Agreement – Faurecia's <u>use</u> of Multimatic's design to allow a competitor to manufacture the cross-beam in a timely fashion for the DaimlerChrysler JS-41 program. The evidence at trial demonstrated that using a different design was not a viable option. The only way that Faurecia could comply with the Confidentiality Agreement and use Multimatic's design was to award Multimatic the supply contract. Accordingly, Multimatic has shown that the breach of the Confidentiality Agreement caused it to suffer lost profits, which were or should have been contemplated by the parties at the time of contracting.

Faurecia also contends that the calculation of Multimatic's lost profits was speculative. "In order to recover prospective profits, a plaintiff must establish proof of lost profits with a reasonable degree of certainty." <u>Joerger v. Gordon Food Serv., Inc.</u>, 224 Mich. App. 167, 175, 568 N.W.2d 365 (1997). Although the jury is not permitted to speculate or guess regarding the amount of lost profits, "Michigan law . . . recognizes the inherent difficulty of measuring lost profits and requires that they be proved with reasonable certainty, not mathematical

precision." Bero Motors, Inc. v. General Motors Corp., 2006 WL 2312182 (Mich. App. Aug. 10, 2006) (citing Fera v. Village Plaza, Inc., 396 Mich. 639, 644, 242 N.W.2d 372 (1976) and Joerger, 224 Mich. App. at 175).

The evidence at trial was sufficient to allow the jury to calculate Multimatic's lost profits with a reasonable degree of certainty. Multimatic presented evidence of actual volume data for 2007 for the JS-41 program. It also presented evidence of the number of years the program was projected to run, using data from CSM, an independent company that specializes in forecasting automotive program volumes. In addition, Multimatic presented evidence that, had it obtained the production contract, it likely would have been the supplier for the duration of the program, because changing the supplier midstream was rare.

Multimatic also provided evidence from which the jury could estimate its lost profit for each cross-beam it projected it would have sold. Mark Sullivan of Multimatic testified that the parties agreed upon a pricing formula. Multimatic also presented evidence of the costs it would incur to manufacture the cross-beam. The evidence regarding lost profit calculations presented by Multimatic was not based upon speculation or guesswork, but on concrete data and reasonable projections, which Faurecia had the opportunity to challenge at trial. The evidence regarding lost profits was sufficient to support the jury's verdict.

## II. **Motion for Relief from Judgment**

Faurecia seeks a reduction in the amount of Multimatic's damages pursuant to Fed. R. Civ. P. 60(b)(2) or (b)(6) based on newly discovered evidence. As discussed above, the calculation of Multimatic's lost profits was based in part upon volume projections for the JS-41 program provided by CSM. After the trial and entry of judgment, on November 1, 2007,

Chrysler announced its decision to cut one of the two shifts manufacturing the JS-41 vehicles. On November 16, 2007, CSM issued revised volume projections that were 31% lower than those relied upon by Multimatic at trial. (The CSM projections relied upon at trial were issued in September 2007.) Faurecia contends that the court should take the revised projections into account and reduce Multimatic's damages by $2,251,569.

Pursuant to Rule 60(b), the court may relieve a party from a final judgment "for the following reasons: . . . (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); . . . or (6) any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b). The Sixth Circuit has recognized "the well-conceived rule that newly discovered evidence for motions under Rule 59 or Rule 60(b)(2) must pertain to evidence which existed at the time of trial." Davis by Davis v. Jellico Community Hosp., Inc., 912 F.2d 129, 136 (6th Cir. 1990). With respect to Rule 60(b)(6), relief is available only in "extraordinary circumstances." Id.

Faurecia is not entitled to relief under Rule 60(b)(2) or (b)(6). The latest CSM projections are not "newly discovered evidence" under the rule because the evidence did not exist at the time of trial. Moreover, permitting the amendment of the judgment each time CSM revised its volume projections (either up or down) would create never-ending litigation. See Davis, 912 F.2d at 135-36.

Likewise, the change in CSM's volume projections is not the type of "extraordinary circumstances" contemplated by Rule 60(b)(6). See id. (holding that the untimely death of a plaintiff soon after a damages award based upon long life expectancy, although "rare," was not the extraordinary circumstance contemplated by Rule 60(b)(6)). The court is not persuaded that

the changed CSM projections warrant granting Faurecia relief from the judgment.

## **ORDER**

IT IS HEREBY ORDERED that Defendant's motion for partial judgment as a matter of law, filed October 18, 2007, is DENIED.

IT IS FURTHER ORDERED that Defendant's motion for relief from judgment, filed December 21, 2007, is DENIED.

                                                  s/John Corbett O'Meara
                                                  United States District Judge

Date: February 15, 2008

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, February 15, 2008, by electronic and/or ordinary mail.

                                                  s/William Barkholz
                                                Case Manager